## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JACK RICE and RANDY BANFI individually and on behalf of all similarly situated individuals,<br><br>                    Plaintiffs,<br><br>v.<br><br>ALPHASTAFF, INC. and DAVID JEFFERSON, SR., personally and individually,<br><br>                    Defendant, | Case No.:<br><br>*Assigned for all purposes to the Honorable*<br><br>**COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND** |

COMES NOW THE PLAINTIFFS, Jack Rice ("Rice") and Randy Banfi ("Banfi") (collectively, "Plaintiffs"), by and through their undersigned attorneys, bring this Collective and Class Action Complaint against David Jefferson, Sr. ("Jefferson") and AlphaStaff, Inc. ("AlphaStaff") (collectively, "Defendants") and state and allege as follows:

### INTRODUCTION

1.      This is a Class and Collective Action brought by Plaintiffs on behalf of themselves and those similarly situated call center employees who were employed at Defendants' call center locations in Northern Illinois, to recover for Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. §§ 105, *et seq*., and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. §§ 115/1, *et seq*., (the IMWL and the IWPCA collectively, "Illinois wage and hour laws").

2.      The U.S. Department of Labor ("DOL") issued guidance on the proper calculation

---

**COLLECTIVE/**
**CLASS ACTION COMPLAINT**
**CASE NO.**

method of overtime premiums. *See* DOL Fact Sheet #23, attached hereto as Exhibit 1, at 1 (". . . overtime pay due must be computed on the basis of the average hourly rate derived from such earnings. This is calculated by dividing by dividing the total pay for employment . . . in any workweek by the total number of hours actually worked.").

3.       Specifically, Plaintiffs and those similarly situated, worked more than 40 hours per workweek without receiving the proper overtime pay for all their overtime hours worked in violation of the FLSA and the Illinois wage and hour laws. This improper calculation of the overtime pay rate was a result of Defendants' willful failure to include commissions earned in calculating Plaintiffs' proper overtime premium pay rate.

4.       Further, from on, or around, October 12, 2018, up to and until December 6, 2018, Plaintiffs and those similarly situated, worked more than 40 hours per workweek without receiving the proper overtime pay for all their overtime hours worked as a result of Jefferson's willful failure to include commissions and the non-discretionary $250.00 Loyalty Bonus earned in calculating Plaintiffs' proper overtime premium pay rate in violation of the FLSA and the Illinois wage and hour laws.

5.       This case also involves Jefferson's willful failure to pay Plaintiffs earned straight time wages, overtime premiums, commissions and/or non-discretionary bonuses earned from November 10, 2018 until on, or around, December 6, 2018, including, but not limited to the non-discretionary $250.00 Loyalty Bonus, in violation of the Illinois wage and hour laws.

6.       Plaintiffs seek a declaration that their rights, the rights of the putative FLSA Class, and the rights of two putative Rule 23 Classes were violated and seek to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief,

attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq.*

8.      This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

9.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

10.     Upon information and belief, Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

11.     Defendants' employees, including Plaintiffs, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

12.     This Court has personal jurisdiction over AlphaStaff because AlphaStaff was previously registered with the Illinois Secretary of State to conduct business within Illinois. Despite AlphaStaff's status being revoked by the Illinois Secretary of State, AlphaStaff systematically and continuously conducted business within the State of Illinois.

**COLLECTIVE/**
**CLASS ACTION COMPLAINT**

3

**CASE NO.**

13.     This Court has personal jurisdiction over Jefferson because Jefferson systematically and continuously conducted business within the State of Illinois.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conducted substantial business within this District and because a substantial portion of the events that give rise to the claims pled in this Complaint occurred in this District.

## PARTIES

15.     Plaintiff Jack Rice is an individual who resides in Northern Illinois. Rice has executed his Consent to Sue form, which is attached hereto, as Exhibit 2.

16.     Plaintiff Randy Banfi is an individual who resides in Northern Illinois. Banfi has executed his Consent to Sue form, which is attached hereto, as Exhibit 3.

17.     Plaintiffs, and those similarly situated, are former hourly Call Center Agents, or other job titles performing the same or similar job duties (hereinafter, "CCAs") who were employed by Defendants to perform work in Defendants' call centers in Northern Illinois.

18.     Defendant David Jefferson, Sr. founded ServiCom LLC ("ServiCom"), a call center business, and served as its Manager and Chief Executive Officer. *See also* ServiCom LLC Company Investigator, attached hereto as Exhibit 4.

19.     Upon information and belief, Jefferson was involved in the development and implementation of ServiCom's human resource policies and payroll practices and moreover, was involved in the day-to-day business operations of ServiCom.

20.     Upon information and belief, Jefferson's involvement with implementing ServiCom's human resource policies and the decisions regarding the payroll practices and the day-

to-day business operations of ServiCom further increased in the Fall of 2018, prior to ServiCom filing for bankruptcy.

21.     Upon information and belief, any and all memoranda and/or oral instruction about payroll disseminated to Jefferson's employees, including Plaintiffs, working at Jefferson's call centers located in Illinois from Fall 2018, up to and until, December 6, 2018, required direct guidance or approval from Jefferson.

22.     Upon information and belief, Jefferson employed call center employees, like Plaintiffs, in call centers in Northern Illinois.

23.     Jefferson can be served by delivering individually to him personally or by leaving a copy with someone of suitable age and discretion who resides at Jefferson's dwelling or usual place of abode located at 23 Thistle Lane, Warren, New Jersey 07059-5564.

24.     Upon information and belief, Defendant AlphaStaff was involved in the development and implementation of ServiCom's human resource policies and payroll practices.

25.     AlphaStaff "provided various human resources management services . . . through a co-employment relationship" with Defendant Jefferson. *See* October 18, 2018, Letter from AlphaStaff, attached hereto as Exhibit 5.

26.     Upon information and belief, AlphaStaff employed call center employees, like Plaintiffs, in call centers in Northern Illinois.

27.     AlphaStaff can be served through its Registered Agent, CT Corporation System, located at 208 South Lasalle Street, Suite 814, Chicago, Illinois, 60604 or by delivering to an Officer or a Managing or General Agent at AlphaStaff's principal place of business located at 800 Corporate Drive, Suite 600, Fort Lauderdale, Florida 33334, or to Registered Agent, Corporate

---

**COLLECTIVE/**
**CLASS ACTION COMPLAINT**

**CASE NO.**

Creations Network Inc., located at 11380 Prosperity Farms Road #221E, Palm Beach Gardens, Florida 33410.

28.     At all times relevant to this Action, up to and until October 11, 2018, Defendants were members of, and engaged in, a joint venture, partnership, or common enterprise, and were acting with the course and scope of, and in pursuance of said joint venture, partnership, or common enterprise in employing Plaintiffs, and other similarly situated CCAs. Exhibit 5 (". . . AlphaStaff has provided various human resources management services to . . . ServiCom . . . *through a co-employment relationship* . . . AlphaStaff is *no longer* your co-employer.") (emphasis added).

29.     At all times relevant to this Action, up to and until October 11, 2018, Jefferson and AlphaStaff were joint employers of Plaintiffs within the meanings of the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 Ill. Comp. Stat. § 105/3(c), and the IWPCA, *id*. at § 115/2.

## GENERAL ALLEGATIONS

I.     **DEFENDANTS EMPLOYED PLAINTIFFS IN THEIR ILLINOIS CALL CENTERS.**

A.     *Defendants Employed Rice.*

30.     Rice was jointly employed by Defendants as an hourly CCA from on, or around, April 2, 2018 until on, or around October 11, 2018.

31.     On, or around, October 12, 2018, AlphaStaff ceased to be Rice's employer. *See* Exhibit 5 ("We are writing to let you know that as of October 12, 2018, AlphaStaff is no longer your co-employer. We will continue to perform certain administrative functions . . . but we share no employment relationship with you.").

32.     From on, or around, October 12, 2018, until Jefferson closed the call center located

---

**COLLECTIVE/**
**CLASS ACTION COMPLAINT**

**CASE NO.**

at 9942 N. Alpine Road Machesney Park, Illinois, on, or around December 6, 2018, Jefferson continued to employ Rice as an hourly CCA.

33.     Prior to Defendants closing the call center located at 175 Executive Parkway, Rockford, Illinois, Rice was trained in the Rockford call center.

34.     Following training, Rice worked at the call center located at 9942 N. Alpine Road, Machesney Park, Illinois.

35.     At the beginning of Rice's employment with Defendants, his hourly rate was approximately $10.50 per hour. When Rice began working the night shift, he received a raise to approximately $11.00 per hour.

36.     Rice's primary job duties included, but were not limited to, making auto-dial phone calls on behalf of Defendants' client, Sirius XM, to Sirius XM's customers to sell subscriptions to customers who had 70 days left of their free trial, to sell or upgrade subscriptions to individuals who multiple vehicles with Sirius XM service, but had just bought a new vehicle, or to assisting Sirius XM's customers with other service-related inquiries.

37.     Regardless of which call center locations he worked at, Rice was subject to the Defendants' same policies and procedures.

**B.     *Defendants Employed Banfi.***

38.     Banfi was jointly employed by Defendants as an hourly CCA from on, or around, September 24, 2018 until on, or around October 11, 2018.

39.     On, or around, October 12, 2018, AlphaStaff ceased to be Banfi's employer. *See* Exhibit 5 ("We are writing to let you know that as of October 12, 2018, AlphaStaff is no longer your co-employer. We will continue to perform certain administrative functions . . . but we share

---

**COLLECTIVE/**
**CLASS ACTION COMPLAINT**

**CASE NO.**

no employment relationship with you.").

40.     From on, or around, October 12, 2018, until Jefferson closed the call center located at 9942 N. Alpine Road Machesney Park, Illinois, on, or around December 6, 2018, Jefferson continued to employ Banfi as an hourly CCA.

41.     Prior to Defendants closing the call center located at 175 Executive Parkway, Rockford, Illinois, Banfi was trained in the Rockford, Illinois call center.

42.     After Defendants closed the Rockford call center on, or around, September 30, 2018, Banfi worked at the call center located at 9942 N. Alpine Road, Machesney Park, Illinois.

43.     At the beginning of Banfi's employment with Defendants, his hourly rate was approximately $10.00 per hour, plus commission for sales. When Banfi began working at the Machesney Park call center, he received a raise to approximately $11.00 per hour, plus commission for sales.

44.     Banfi's primary job duties included but were not limited to making auto-dial phone calls on behalf of Defendants' client, Sirius XM, to Sirius XM's customers who had recently canceled their subscriptions to try to "win back", inputting data in the computer programs from the calls, and assisting with customer service-related inquiries while on the call.

45.     Regardless of which call center locations he worked at, Banfi was subject to the Defendants' same policies and procedures.

### *C.* **DEFENDANTS WILLFULLY EXCLUDED EARNED COMMISSIONS AND NON-DISCRETIONARY BONUSES IN CALCULATING PLAINTIFFS' REGULAR RATES OF PAY AND SUBSEQUENT OVERTIME PREMIUM RATES.**

46.     Plaintiffs, and others similarly situated, were regularly scheduled to work 40 hours

---

**COLLECTIVE/**
**CLASS ACTION COMPLAINT**

8

**CASE NO.**

per workweek and often worked in excess of 40 hours per workweek.

47.     At all times relevant to this Action, up to and until October 11, 2018, Defendants' pay scheme incorporated the ability for the call center employees to earn non-discretionary bonuses and/or commission through sales.

48.     At all times relevant to this Action, following Jefferson's and AlphaStaff's dissolution of their joint employment of Plaintiffs, Jefferson's pay scheme incorporated the ability for the call center employees to earn non-discretionary bonuses and/or commission through sales.

49.     On, or around, October 17, 2018, Jefferson offered a non-discretionary, $250.00 "Loyalty Bonus" to "any current active employee that continues to believe in, support and show they are committed to the ServiCom Team" to be paid out on December 2, 2018. *See* Current Status and Future of ServiCom letter, attached hereto as Exhibit 6.

50.     Defendants knew, or should have known, that the FLSA, 29 U.S.C. § 207, required them to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable off-the-clock pre-shift work performed.

51.     Defendants knew or should have known that Illinois wage and hour laws require employers to pay employees overtime premiums for all hours in excess of forty (40) hours per workweek "at a rate not less than 1 ½ times the regular rate" at which he was employed.  820 Ill. Comp. Stat. § 105/4a(1).

52.     Defendants knew, or should have known, that for purposes of the FLSA and the Illinois wage and hours laws that an employee's "regular rate" of pay is determined by adding together the employee's total compensation—which includes the employee's hour rate and non-

discretion incentive payments, such as bonuses and/or commission, and dividing the number by the total number of hours worked by the employee during the week in which the compensation was earned.

53.     Defendants knew, or should have known, that the IWPCA mandates "[e]very employer shall be required, at least semi-monthly, to pay every employee *all wages earned* during the semi-monthly pay period." 820 Ill. Comp. Stat. § 115/3) (emphasis added).

54.     Defendants knew, or should have known, that "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned." *Id*. at § 115/4.

55.     Despite this, Defendants suffered and permitted Plaintiffs, and others similarly situated, to work more than 40 hours per work week without receiving proper overtime pay by failing to include their non-discretionary incentive pay, such as their commissions, non-discretionary bonuses, and/or the $250.00 Loyalty Bonus, in calculating their regular rate of pay used to pay overtime compensation.

## II.     JEFFERSON FAILED TO PAY EARNED WAGES, INCLUDING, FINAL COMPENSATION.

56.     Jefferson knew, or should have known, that the IWPCA mandates "[e]very employer shall be required, at least semi-monthly, to pay every employee *all wages earned* during the semi-monthly pay period." 820 Ill. Comp. Stat. § 115/3) (emphasis added).

57.     Jefferson knew, or should have known, that "[a]ll wages earned by any employee

during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned." *Id*. at § 115/4.

58.     Jefferson knew, or should have known, that the IWPCA mandates "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." *Id*. at § 115/5.

59.     At all times relevant to this Action, Plaintiffs worked for Jefferson for hourly rates of pay and non-discretionary bonuses and/or commissions through sales.

60.     On, or around, October 17, 2018, Jefferson offered a non-discretionary, $250.00 "Loyalty Bonus" to be paid out on December 2, 2018. *See* Exhibit 6.

61.     On, or around November 21, 2018, Plaintiffs received paychecks that covered the pay period ending November 9, 2018.

62.     From November 10, 2018 until on, or around, December 6, 2018, Plaintiffs, and others similarly situated, continued to work for Jefferson, despite not being paid their wages earned.

63.     Rice and Banfi orally demanded to Defendants that their wages be remitted to them numerous times, however, Rice and Banfi were not paid for their worked performed from November 10, 2018 until and including, on, or around, December 6, 2018.

64.     Plaintiffs, and others similarly situated, continued to work for Jefferson because they reasonably relied on Jefferson continuous reassurance that he would remit payment of their wages. *See* October 31, 2018 letter, attached hereto as Exhibit 7 ("There is a need for additional payroll processing time . . . We do not expect this to be a long term solution but rather a short term

revision to get through our business reorganization . . . We would like to state that our employee's

jobs and wages are in no way threatened or in jeopardy!"); *see also* December 5, 2018 letter,

attached hereto as Exhibit 8 (informing Plaintiffs their paychecks would be further delayed).

65.     Despite Jefferson's promises and in direct violation of the IMWL and the IWPCA,

Jefferson willfully failed to remit wages, overtime premiums, non-discretionary bonuses and/or

commissions, including, but not limited to the $250.00 "Loyalty Bonus" for work performed by

Plaintiffs, and other similarly situated, from November 10, 2018, through on, or around December

6, 2018.

## III.     JEFFERSON AND ALPHASTAFF WERE JOINT EMPLOYERS UNDER THE FLSA AND ILLINOIS WAGE LAWS.

66.     At all relevant times Jefferson and Alphastaff were joint employers.

67.     Pursuant to the FLSA and Illinois Wage Act, a joint employer is determined by

applying the "four-factor test: whether the alleged employer (1) had the power to hire and fire the

employees; (2) supervised and controlled employee work schedules or conditions of employment;

(3) determined the rate and method of payment; and (4) maintained employment records." *Morgan*

*v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 650 (N.D. Ill. 2007).

68.     On information and belief, Defendants acted as joint employers in the following

ways: a) Jefferson founded ServiCom and served as its Manager and Chief Executive Officer (*see*

Exhibit 4); b) Jefferson was involved in the decision to enter into a co-employment relationship

with AlphaStaff to control the overarching and the day-to-day operations of the ServiCom call

center locations; c) together, Defendants were involved in the development and implementation of

ServiCom's human resource policies, including, but not limited to, employee hiring, firing,

---

**COLLECTIVE/**
**CLASS ACTION COMPLAINT**

**CASE NO.**

supervision, and conditions of employment, and payroll practices, including, but not limited to, how employees were paid, and Defendants were together involved in the day-to-day business operations of ServiCom; d) AlphaStaff "provided various human resources management services . . . through a co-employment relationship" with Jefferson (*see* Exhibit 5); and e) together, Defendants employed Plaintiffs and all over ServiCom call center employees in call cetners in Machesney Park and Rockford, Illinois.

69.      In fact, on October 18, 2018, in a letter to Plaintiffs and the Class, AlphaStaff conceded it was Plaintiffs joint employer stating AlphaStaff "provided various human resources management services . . . through a co-employment relationship" and that as of October 12, 2018, it was no longer Plaintiffs "co-employer". *See* Exhibit 5.

## COLLECTIVE ACTION ALLEGATIONS

70.      Plaintiff Rice bring this action pursuant to the FLSA, 29 U.S.C. § 216(b) on their own behalves and on behalf of:

> *All former Call Center Agents who worked for David Jefferson, Sr. and/or AlphaStaff, LLC in their ServiCom call center locations located in Rockford, Illinois and/or Machesney Park, Illinois, who received sales-based bonuses and/or commissions at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition as necessary.

71.      Plaintiffs do not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

72.      *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard*: With respect to the claims set forth in this action, a collective action under the FLSA is appropriate

because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiffs. The class of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they were employed by Defendants in the same or similar positions as Plaintiffs; (b) they were subject to the same or similar unlawful practices, policies, or plans as Plaintiffs (namely, Defendants' practices, policy, or plan of not considering commission payments and/or non-discretionary bonus payments in the calculation of their employees regular rates of pay per workweek, and subsequently, the proper overtime premiums owed to their employees); (c) their claims are based upon the same legal theories as Plaintiffs; and (d) the employment relationship between Defendants and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

73.     Upon information and belief, Plaintiffs estimate that the FLSA Collective, including both current and former call center employees over the relevant period, will include several thousand members who would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it. The precise number of collective Class members should be readily available from a review of Defendants' personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

74.     Plaintiffs share the same interests as the FLSA Collective in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, to the factual assessment and legal standards lend themselves to a collective action.

---

**COLLECTIVE/**
**CLASS ACTION COMPLAINT**

**CASE NO.**

## THE ILLINOIS RULE 23 CLASS ACTION ALLEGATIONS

75.     Plaintiff Rice brings this Action pursuant to Fed. R. Civ. P. 23 on behalf of putative

Class defined to include:

> *All former Call Center Agents who worked for David Jefferson, Sr. and/or*
> *AlphaStaff, LLC in any ServiCom call center located in Rockford, Illinois and/or*
> *Machesney Park, Illinois, who received sales-based bonuses and/or commissions,*
> *at any time in the last three years.*

(hereinafter referred to as the "Illinois Improper Overtime Premiums Class"). Plaintiffs reserve the

right to amend this definition as necessary.

76.     Plaintiff Banfi brings this Action pursuant to Fed. R. Civ. P. 23 on behalf of putative

Class defined to include:

> *All former Call Center Agent who worked for David Jefferson, Sr. his ServiCom*
> *call center location in Machesney Park, Illinois, at any time from November 10,*
> *2018 until, on, or around December 6, 2018.*

(hereinafter referred to as the "Illinois Machesney Park Closure Class"). Plaintiffs reserve the right

to amend this definition as necessary.

77.     *Numerosity*: The members of the Illinois Improper Overtime Premiums Class and

the Illinois Machesney Park Closure Class are so numerous that joinder of all members in the case

would be impracticable, and the disposition of their claims as a Class will benefit the parties and

the Court. The precise number of Class members should be readily available from a review of

Defendant's personnel and payroll records.

78.     *Commonality/Predominance*:   There is a well-defined community of interest

among Illinois Improper Overtime Premiums Class and the Illinois Machesney Park Closure Class

members and common questions of both law and fact predominate in the action over any questions

affecting individual members. These common legal and factual questions include, but are not limited to, the following:

    a.    Whether AlphaStaff and Jefferson violated the IMWL and the IWPCA through their pay practices;

    b.    Whether AlphaStaff's and Jefferson's violations of the IMWL and the IWPCA were willful;

    c.    Whether AlphaStaff and Jefferson should be required to pay unpaid wages, overtime premiums, penalties, attorneys' fees and costs, and pre-and post-judgment interest for violating the IMWL and the IWPCA;

    d.    Whether Defendants were joint employers under the Act; and

    e.    Whether Defendants pay scheme incorrectly calculated their employees actual rate of pay, and as a result, failed to pay their employees the actual amount of overtime due under the law.

79. *Typicality*: Rice's claims are typical of those of the Illinois Improper Overtime Premiums Class in that Rice and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Rice's claims arise from Defendants' same policies, practices, and course of conduct as all other Illinois Improper Overtime Premiums Class members' claims and Rice's legal theories are based on the same legal theories as all other Illinois Improper Overtime Premiums Class members: whether all Illinois Improper Overtime Premiums Class members were employed by Defendants on an hourly basis with a compensation scheme that included non-discretionary bonuses and/or commissions that

Defendants failed to include in calculating the Illinois Improper Overtime Premiums Class's regular rates of pay and subsequent overtime premiums.

80.     *Typicality*:  Banfi's claims are typical of those of the Illinois Machesney Park Closure Class in that Banfi and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices.  Banfi's claims arise from Defendants' same policies, practices, and course of conduct as all other Illinois Machesney Park Closure Class members' claims and Banfi's legal theories are based on the same legal theories as all other Illinois Machesney Park Closure Class members: whether all Illinois Machesney Park Closure Class members were employed by Defendants on an hourly basis with a compensation scheme that included non-discretionary bonuses and/or commissions anytime from November 10, 2018 until December 6, 2018 and were not paid earned wages and non-discretionary bonuses and/or commissions.

81.     *Adequacy*:  Rice will fully and adequately protect the interests of the Illinois Improper Overtime Premiums Class and Banfi will fully and adequately protect the interests of the Illinois Machesney Park Closure Class. Rice and Banfi retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Rice, Banfi, nor their counsel has interests that are contrary to, or conflicting with, the interests of the Illinois Improper Overtime Premiums Class and the Illinois Machesney Park Closure Class.

82.     *Superiority*:  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible Illinois Improper Overtime Premiums Class and the Illinois Machesney Park Closure Class members to prosecute individual actions of their own given the relatively small amount of damages at stake

for each individual. Given the material similarity of the Illinois Improper Overtime Premiums Class and the Illinois Machesney Park Closure Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative class' claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

83.     The case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Illinois Improper Overtime Premiums Class and the Illinois Machesney Park Closure Class within that group a separate opt-out notice pertaining to their rights under the Illinois state law. Rice, Banfi and their counsel know of no unusual difficulties in the case and Defendants have payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## CAUSES OF ACTION

### COUNT 1- VIOLATION OF THE FLSA
### (On Behalf of Plaintiffs and the FLSA Collective)

84.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

85.     At all times relevant to this Action, up to and until October 11, 2018, AlphaStaff was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

86.     At all times relevant to this Action, up to and until October 11, 2018, AlphaStaff engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

87.     At all times relevant to this Action, Jefferson was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

88.     At all times relevant to this Action, Jefferson engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

89.     At all times relevant to this Action, up to and until October 11, 2018, AlphaStaff and Jefferson were members of, and engaged in, a joint venture, partnership, or common enterprise, and were acting with the course and scope of, and in pursuance of said joint venture, partnership, or common enterprise in employing Plaintiffs, and other similarly situated CCAs.

90.     At all times relevant to this Action, up to and until October 11, 2018, Plaintiffs, and others similarly situated, were "employee[s]" of AlphaStaff within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

91.     At all times relevant to this Action, Plaintiffs, and others similarly situated, were "employee[s]" of Jefferson within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

92.     At all times relevant, Plaintiffs, and others similarly situated, either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

93.     The position of Call Center Agent is not exempt from the FLSA.

94.     Defendants' other job titles performing similar call center agent job duties are not exempt from the FLSA.

95.     At all times relevant to this Action, up to and until October 11, 2018, AlphaStaff "suffered or permitted" Plaintiffs, and others similarly situated, to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

96.     At all times relevant to this Action, Jefferson "suffered or permitted" Plaintiffs, and others similarly situated, to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

97.     Plaintiffs, and others similarly situated, were regularly scheduled to work 40 hours per workweek and often worked in excess of 40 hours per workweek.

98.     The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

99.     At all times relevant to this Action, up to and until October 11, 2018, AlphaStaff's pay scheme with its call center employees, including Plaintiffs, incorporated the ability for the call center employees to earn non-discretionary bonuses and/or commission through sales.

100.    At all times relevant to this Action, Jefferson's pay scheme with its call center employees, including Plaintiffs, incorporated the ability for the call center employees to earn non-discretionary bonuses and/or commission through sales.

101.    On, or around, October 17, 2018, Jefferson offered a non-discretionary, $250.00 "Loyalty Bonus" to "any current active employee that continues to believe in, support and show

---

**COLLECTIVE/**
**CLASS ACTION COMPLAINT**

20

**CASE NO.**

they are committed to the ServiCom Team" to be paid out on December 2, 2018. *See* Exhibit 6.

102.     As a result of failing to include non-discretionary bonuses, commissions, and/or other bonuses in calculating overtime compensation, Defendants routinely suffered and permitted Plaintiffs, and the FLSA Collective, to work more than 40 hours per workweek without receiving proper overtime premiums in violation of the FLSA.

103.     Upon information and belief, Defendants' has corporate policies, practices or plans for evading overtime pay for its hourly workers as it is alleged in this Complaint.

104.      Defendants' conduct as it is alleged in this Complaint constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255, as Defendants knew, or showed reckless disregard for the fact their compensation practices violated the FLSA.

105.     By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants have violated the FLSA, 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated call former hourly CCAs, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate.

106.     None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiffs or the Class.

107.     As the direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the FLSA collective have suffered a loss of income and other damages. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her

unpaid overtime wages at the proper overtime rate, plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

### COUNT 2- VIOLATION OF THE IMWL & IWPCA
***(On Behalf of Plaintiffs and Rule 23 Illinois Improper Overtime Premiums Class)***

108. Plaintiffs re-allege and incorporate all previous paragraphs herein.

109. At all times relevant to this Action, up to and until October 11, 2018, AlphaStaff was an "employer" under the IMWL, 820 Ill. Comp. Stat. § 105/3(c), subject to the provisions of the IMWL. *See* 820 Ill. Comp. Stat. §§ 105, *et seq.*

110. At all times relevant to this Action, up to and until October 11, 2018, AlphaStaff was an "employer" under the IWPCA, 820 Ill. Comp. Stat. § 115/2, subject to the provisions of the IMWL. *See* 820 Ill. Comp. Stat. §§ 115/1, *et seq.*

111. At all times relevant to this Action, Jefferson was an "employer" under the IMWL, 820 Ill. Comp. Stat. § 105/3(c), subject to the provisions of the IMWL. *See* 820 Ill. Comp. Stat. §§ 105, *et seq.*

112. At all times relevant to this Action, Jefferson was an "employer" under the IWPCA, 820 Ill. Comp. Stat. § 115/2, subject to the provisions of the IMWL. *See* 820 Ill. Comp. Stat. §§ 115/1, *et seq.*

113. At all times relevant to this Action, up to and until October 11, 2018, AlphaStaff and Jefferson were members of, and engaged in, a joint venture, partnership, or common enterprise, and were acting with the course and scope of, and in pursuance of said joint venture, partnership, or common enterprise in employing Plaintiffs, and other similarly situated CCAs. *See* Exhibit 5.

114. At all times relevant to this Action, up to and until October 11, 2018, Plaintiffs, and others similarly situated, were "employee[s]" of AlphaStaff within the meaning of the IMWL, 820 Ill. Comp. Stat. § 105/3(d), entitled to the protections of the IMWL. *See* 820 Ill. Comp. Stat. §§ 105, *et seq.*

115. At all times relevant to this Action, up to and until October 11, 2018, Plaintiffs, and others similarly situated, were "employee[s]" of AlphaStaff within the meaning of the IWPCA, 820 Ill. Comp. Stat. § 115/2, entitled to the protections of the IWPCA. *See* 820 Ill. Comp. Stat. §§ 115/1, *et seq.*

116. At all times relevant to this Action, Plaintiffs, and others similarly situated, were "employee[s]" of Jefferson within the meaning of the IMWL, 820 Ill. Comp. Stat. § 105/3(d), entitled to the protections of the IMWL. *See* 820 Ill. Comp. Stat. §§ 105, *et seq.*

117. At all times relevant to this Action, up to and until October 11, 2018, Plaintiffs, and others similarly situated, were "employee[s]" of Jeferson within the meaning of the IWPCA, 820 Ill. Comp. Stat. § 115/2, entitled to the protections of the IWPCA. *See* 820 Ill. Comp. Stat. §§ 115/1, *et seq.*

118. At all times relevant to this Action, up to and until October 11, 2018, AlphaStaff "permitted" Plaintiffs, and others similarly situated, to work and thus "employed" them within the meaning of the IMWL, 820 Ill. Comp. Stat. § 105/3(d), and the IWPCA, 820 Ill. Comp. Stat. § 115/2.

119. At all times relevant to this Action, Jefferson "permitted" Plaintiffs, and others similarly situated, to work and thus "employed" them within the meaning of the IMWL, 820 Ill. Comp. Stat. § 105/3(d), and the IWPCA, 820 Ill. Comp. Stat. § 115/2.

120.    Plaintiffs, and others similarly situated, were regularly scheduled to work 40 hours per workweek and often worked in excess of 40 hours per workweek.

121.    The IMWL requires an employer to pay employees the Illinois mandated overtime premium "at a rate not less than 1 ½ times the regular rate" at which he or she was employed.  820 Ill. Comp. Stat. § 105/4a(1).

122.    At all times relevant to this Action, up to and until October 11, 2018, AlphaStaff's pay scheme with its call center employees, including Plaintiffs, incorporated the ability for the call center employees to earn non-discretionary bonuses and/or commission through sales.

123.    At all times relevant to this Action, Jefferson's pay scheme with its call center employees, including Plaintiffs, incorporated the ability for the call center employees to earn non-discretionary bonuses and/or commission through sales.

124.    On, or around, October 17, 2018, Jefferson offered a non-discretionary, $250.00 "Loyalty Bonus" to "any current active employee that continues to believe in, support and show they are committed to the ServiCom Team" to be paid out on December 2, 2018. *See* Exhibit 6.

125.    As a result of failing to include non-discretionary bonuses, commissions, and/or other bonuses in calculating overtime compensation, Defendants routinely suffered and permitted Plaintiffs, and the Illinois Improper Overtime Premiums Class, to work more than 40 hours per workweek without receiving proper overtime premiums in violation of the IMWL and the IWPCA.

126.    The IWPCA mandates "[e]very employer shall be required, at least semi-monthly, to pay every employee *all wages earned* during the semi-monthly pay period." 820 Ill. Comp. Stat. § 115/3) (emphasis added) and that "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the

---

**COLLECTIVE/**
**CLASS ACTION COMPLAINT**

**CASE NO.**

pay period in which such wages were earned." *Id*. at § 115/4.

127.    By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants have violated the IMWL and the IWPCA. All similarly situated call former hourly CCAs, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the mandated overtime wage rate.

128.    Upon information and belief, Defendants' has corporate policies, practices or plans for evading overtime pay for its hourly workers as it is alleged in this Complaint.

129.     Defendants' conduct as it is alleged in this Complaint constitutes a willful violation of the IMWL, within the meaning of 820 Ill. Comp. Stat. § 105/12, as Defendants knew, or showed reckless disregard for the fact their compensation practices violated the IMWL.

130.    None of the provisions of the IMWL or the IWPCA can be contravened, set aside, abrogated, or waived by Plaintiffs or the Class.

131.    As the direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the Illinois Improper Overtime Premiums Class have suffered a loss of income and other damages in amounts to be determined at trial. The IMWL and the IWPCA, provide that as a remedy for a violation of the Illinois wage and hour laws, an employee is entitled to his or her unpaid overtime wages at the proper overtime rate, plus an additional amount of 2% of the amount of any such underpayment for each month following the date of payment during which underpayments remain unpaid,  costs, and reasonable attorneys' fees. *See* 820 Ill. Comp. Stat. § 105/14(a) and *id*. at § 115/14.

## COUNT 3- VIOLATION OF THE IMWL & IWPCA
### (*On Behalf of Plaintiffs and Rule 23 Illinois Machesney Park Closure Class*)

132.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

133.    At all times relevant to this Action, Jefferson was an "employer" under the IMWL, 820 Ill. Comp. Stat. § 105/3(c), subject to the provisions of the IMWL. *See* 820 Ill. Comp. Stat. §§ 105, *et seq.*

134.    At all times relevant to this Action, Jefferson was an "employer" under the IWPCA, 820 Ill. Comp. Stat. § 115/2, subject to the provisions of the IMWL. *See* 820 Ill. Comp. Stat. §§ 115/1, *et seq.*

135.    At all times relevant to this Action, Plaintiffs, and others similarly situated, were "employee[s]" of Jefferson within the meaning of the IMWL, 820 Ill. Comp. Stat. § 105/3(d), entitled to the protections of the IMWL. *See* 820 Ill. Comp. Stat. §§ 105, *et seq.*

136.    At all times relevant to this Action, Jefferson "permitted" Plaintiffs, and others similarly situated, to work and thus "employed" them within the meaning of the IMWL, 820 Ill. Comp. Stat. § 105/3(d), and the IWPCA, 820 Ill. Comp. Stat. § 115/2.

137.    The IMWL requires an employer to pay employees the Illinois mandated overtime premium "at a rate not less than 1 ½ times the regular rate" at which he or she was employed.  820 Ill. Comp. Stat. § 105/4a(1).

138.    The IWPCA mandates "[e]very employer shall be required, at least semi-monthly, to pay every employee *all wages earned* during the semi-monthly pay period." 820 Ill. Comp. Stat. § 115/3) (emphasis added) and that "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the

pay period in which such wages were earned." *Id*. at § 115/4.

139.    The IWPCA further mandates "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." *Id.* at § 115/5.

140.    Any employee whose employer who fails to pay him or her all wages earned at least semi-monthly shall be paid within 5 days of making a demand for payment. *Id.* at § 115/4.

141.    Similarly, any employee whose employer fails to pay him or her final compensation, shall be paid upon demand. *Id*.

142.    Plaintiffs, and others similarly situated, were regularly scheduled to work 40 hours per workweek and often worked in excess of 40 hours per workweek. There were also weeks in which Plaintiffs, and others similarly situated worked less than 40 hours per workweek.

143.    At all times relevant to this Action, Jefferson's pay scheme with its call center employees, including Plaintiffs, incorporated the ability for the call center employees to earn non-discretionary bonuses and/or commission through sales.

144.    On, or around, October 17, 2018, Jefferson offered a non-discretionary, $250.00 "Loyalty Bonus" to "any current active employee that continues to believe in, support and show they are committed to the ServiCom Team" to be paid out on December 2, 2018. *See* Exhibit 6.

145.    From November 10, 2018 until on, or around, December 6, 2018, Plaintiffs and the Illinois Machesney Park Closure Class worked without being compensated for their time.

146.    Plaintiffs demanded their wages, but never received them, instead reasonably relying on Jefferson's continuous reassurances that he would eventually remit payment of their wages. *See* Exhibits 7-8.

---

147.     Despites Jefferson's promises, and in direct violation of the IMWL and the IWPCA, Jefferson willfully failed to remit wages, overtime premiums, non-discretionary bonuses and/or commissions, including, but not limited to the $250.00 "Loyalty Bonus" for work performed by Plaintiffs, and other similarly situated, from November 10, 2018, through on, or around December 6, 2018, when Jefferson closed the call center located at 9942 N. Alpine Road Machesney Park, Illinois.

148.     Defendants' conduct as it is alleged in this Complaint constitutes a willful violation of the IMWL, within the meaning of 820 Ill. Comp. Stat. § 105/12, as Defendants knew, or showed reckless disregard for the fact their compensation practices violated the IMWL.

149.     None of the provisions of the IMWL or the IWPCA can be contravened, set aside, abrogated, or waived by Plaintiffs or the Class.

150.     As the direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the Illinois Improper Overtime Premiums Class have suffered a loss of income and other damages in amounts to be determined at trial. The IMWL and the IWPCA, provide that as a remedy for a violation of the Illinois wage and hour laws, an employee is entitled to his or her unpaid overtime wages at the proper overtime rate, plus an additional amount of 2% of the amount of any such underpayment for each month following the date of payment during which underpayments remain unpaid,  costs, and reasonable attorneys' fees. *See* 820 Ill. Comp. Stat. § 105/14(a) and *id.* at § 115/14.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

A.     An Order certifying this case as a collective action in accordance with 29 U.S.C. §

---

**COLLECTIVE/**
**CLASS ACTION COMPLAINT**

28

**CASE NO.**

216(b) with respect to the FLSA claims set forth above;

B.    An Order designating Plaintiff Rice to act as the FLSA Collective Representative, on behalf of all similarly individuals;

C.    An Order certifying this action as a class action for the Rule 23 Illinois Improper Overtime Premiums Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.    An Order designating Plaintiff Rice to act as the Rule 23 Illinois Improper Overtime Premiums Class Representative, on behalf of all similarly individuals;

E.    An Order certifying this action as a class action for the Rule 23 Illinois Machesney Park Closure Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

F.    An Order designating Plaintiff Banfi to act as the Rule 23 Illinois Machesney Park Closure Class Representative, on behalf of all similarly individuals;

G.    An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

H.    An Order declaring that Defendants willfully violated the FLSA and its attendant regulations as set forth above;

I.    An Order declaring that Defendants violated its obligations under the FLSA;

J.    An Order declaring that Defendants willfully violated the IMWL and the IWPCA and their attendant regulations as set forth above;

K.    An Order declaring that Defendants violated its obligations under the IMWL and the IWPCA;

L.    An Order granting judgment in favor of Plaintiffs and against Defendants and awarding the amount of unpaid minimum wages and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiffs' regular rate multiplied by all hours that Plaintiffs worked in excess of 40 hours per week for the past three years for the FLSA Class and for the past three years for the Illinois Improper Overtime Premiums Class and the Illinois Machesney Park Closure Class;

M.    An Order awarding liquidated damages to Plaintiffs, in an amount equal to the amount of unpaid overtime found owing to Plaintiffs under the FLSA;

N.    An Order granting judgment in favor of Plaintiffs and against Defendants and awarding the amount of unpaid regular wages owed, including, but not limited to non-discretionary bonuses, the $250.00 loyalty bonus, and commission for the past three years for the Illinois Machesney Park Closure Class;

O.    An Order awarding penalties to Plaintiffs under the IMWL and the IWPCA;

P.    An Order awarding reasonable attorney fees and costs incurred by Plaintiffs in filing this action;

Q.    An Order awarding pre-judgment interest to Plaintiffs and the FLSA Collective (to the extent liquidated damages are not awarded) and post-judgment interest to Plaintiffs on these damages; and

R.    An Order awarding such further relief as this court deems appropriate.

## **JURY DEMAND**

NOW COME Plaintiffs, by and through their Attorneys, and hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

Dated: February 26, 2019

By: /s *Peter J. Flowers*
Peter J. Flowers
Illinois State Bar No. 06210847
**MEYERS & FLOWERS, LLC**
3 North Second Street, Suite 300
St. Charles, Illinois 60174
Telephone: (630) 232-6333
Facsimile: (630) 845-8982

*Local Counsel for Plaintiffs*

Timothy J. Becker (MN Bar No. 256663)*
Molly E. Nephew (MN Bar No. 397607)*
**JOHNSONBECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
tbecker@johnsonbecker.com
mnephew@johnsonbecker.com

*Trial Counsel for Plaintiffs*

*PHV Anticipated

---

**COLLECTIVE/
CLASS ACTION COMPLAINT**

31

**CASE NO.**